# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA
# FOURTH DIVISION

Civil #: _____

Theo Smith
Plaintiff

**Complaint**
**Assets Recovery**

Vs.

Ghana Commercial Bank, Ltd.
Attorney General/Government of Ghana
Mr. John A. Mills
Defendants

---

### ORIGINAL COMPAINT

### Parties

Plaintiff

1.   Theo Smith is a citizen of the United States of America.

2.   And holds the position of chairman in a legal registered corporation under the laws of Ghana.

Defendants

3.      Ghana Commercial Bank Limited was incorporated in 1953 in Accra
Ghana and having as its major shareholder the Ministry for Finance and
Economic Planning with its headquarters at Ghana Commercial Bank
Building High Street & Thorpe Road, PO Box 134, Accra Ghana.

4.      The State Attorney General at the office of the Ministry of Justice of
Ghana PO Box MB. 60, Ministries, Accra, Ghana

5.      John Atta Mills, the President, with the address at the Castle
Osu/Accra Ghana.

6.      Whenever reference is made in this Complaint of an act or practice of
Defendants, the government of Ghana and Ghana Commercial Bank
(collectively) such allegations are deemed to mean principals, officers,
directors, employees, agents, representatives of said Defendants did,
authorized, such acts or practices on behalf of Defendants while actively
engaged in the scope of their duties. Or, Defendant when referred to by
name.

## Jurisdiction

Federal Question Jurisdiction

7.      Title 28, Section 1331 of the United States Code confers upon federal
district courts jurisdiction over rights involved U.S. Constitution, federal
statutes, and treaties. This court has jurisdiction to hear cause of action

giving rise to treaty violation including but not limited to the treaties of Disposition of Real and Personal Property and Against Corruption.

Diversity Jurisdiction

8.      Title 28 Sec 1332(a) controversy between parties of diverse citizenship and when the amount of controversy exceeds 75,000 dollars.

# Venue

9.    The U. S. District Court has original jurisdiction to hear federal-question claims. The U.S. is the proper venue.

## Contextual Background
(Under FRCP 9 (b) (f)

### Regions of great economic and political instability

10.    Procedurally picking up and delivering coins, currency, diamonds, gems, precious metals, etc. to banks, financial institutions, international organizations, and private concerns is basically the same throughout the world.

11.    Essentially, the procedure is one of transportation with all of the safeguards from arm attack and inside operations.

12.    Exhibit A is one example of two occurrences where millions of dollars shipped in a box from South Africa was stolen at Heathrow International Airport in London and over time the police apprehended the robbers, who were workers at the airport, and recover the money.

Airport in London and over time the police apprehended the robbers, who were workers at the airport, and recover the money.

13.     In Ghana/Africa,  the current political model allows political regimes rights of entitlement to take valuable assets that are in there reach and domain for personal gain despite legal prohibition.

14.     European states in the interest of protecting their industries' vital flow of transactional commerce developed technological methods used during transport and storage to minimize political entitlement.

15.     One such method, among many, is the protocol of certified zonal agents to deal with full-faced defaced currency, half-faced defaced currency, designer-faced defaced currency.

16.     In contrast, the U.S.' industrial and commercial sectors operating in politically unstable countries around the world don't use such security techniques, though available at all ATM machines around the world.

17.     A case in point, 12 billion dollars shipped from the U.S. to Baghdad with 9 billions completely disappeared in many hands with any accounting.


**Factual Allegations**


**Private banking a subdivision of European banking system**


18.     Zonal agents, under the auspices of the national government, are highly trained technicians who received their training and certification either from subsidiaries of financial institutions of Europe or from subsidiaries of financial institutions in Ghana/Africa, both of which are an integral part of

the financial infrastructure of Ghana and the European's banking global network.

19.      Plaintiff' money/consignment arrived in Ghana September of 1999 from the sell of gems and precious metals.

20.      Plaintiff 's *first* step was making an inspection of the currency and bring a sample back to the U.S. to have it validated as being genuine.

21.      Which involved four separate entities for verification, finally, the U.S. Secret Service returning the sample banknotes as they were genuine.

22.      Plaintiff's *second* step in April 2001 was contacting a certified zonal agent by the name of Tony, a security protocol established by the European, to do order entry paperwork for the requisition of the equipment and supplies to process Eighteen Million dollars of designed-faced defaced currency at a cost of Seventy-Five Thousand dollars.

23.      Plaintiff's *third* step was initiating the order entry registration process requiring two photos, a photocopy of the American passport, and a form detailing personal information.  This procedural step is common and is done at all financial institutions in Ghana and in many states in Europe when establishing a noncitizen account.

24.      The order entry registration process comes under the banking procedure of private banking that has been established by Europe's major banks and their global financial network subsidiaries close to one hundred years.

25.      Plaintiff's *fourth* step was the consummation of an agreement with Tony (for Tony is known at all banks in Accra for picking up and delivering currency).

26.    Plaintiff's *fifth* step, after the completion of all of the upfront paper work, was the arrangement of the time and place for personal delivery of the currency assets in the hands of Tony.

27.    The work was done in a highly professional manner as Plaintiff's security agent personally observed the work at Tony's place of business.

28.    Being the first American encountered in such a transactional process in Ghana as most of the traders are from Europe, India, Middle-East, and Asia,   Tony used arm of might to seize the consignment and then put forth an extortion plan by which he would return the consignment in exchange for money.  Plaintiff refused to cooperate.

29.    What precipitated this extortion demand?  Plaintiff unfortunately being under challenged circumstances gave Tony the original legal paper of entitlement without having a duplicate copy at the time of giving him the currency consignment for processing.

30.    Photocopying the original ownership document presented some issues as photocopying machines were in very few places in Accra and could have taken 2 hours or more to find a location with the hope of the photocopying machine was operational, even yet there was no self-service- a security risk.

## Defendants' principal-agent relationship.

31.    In an odd coincident many months later August of 2001, Mr. Robert, who has a principal-agent relationship with Defendants, the same as Tony, not knowing any details, asked if Plaintiff had encountered a problem with his currency assets.

32.    The work that Mr. Robert and Tony do fall under the Standard
Industrial Classification Code, SIC, 6099:  Functions Related to Depository
Banking.

33.    Plaintiff acknowledged the problem and gave details of how Tony
took the assets with the help of one of his associates.

34.    Thereupon, Mr. Robert, sitting in his  high-back leather swivel chair
behind his seven feet long African mahogany deck, immediately arranged by
phone for Tony to bring the assets to his office with prepared transferred
documents the following day.

35.    The phone call illustrates a unified organizational hierarchy of a
closed operational division of shipping and transporting.

36.    The following day, Tony delivered the assets and placed it in the
conference room of glass doors where Plaintiff was allowed to inspect the
content and found no problems.

37.    The place where Mr. Robert's conducts his business is owned by the
government. The address 10 Portnoyo Street AMHHS 01813 . The plot
number 324 RAT , ACA  R85 area.


## Ghana Commercial Bank & the state's clandestine security agents

38.    Plaintiff witness Mr. Robert signing a paper giving him custody of the
consignment.

39.    And he took the currency asset directly to the Ghana Commercial
Bank's vault facility.

40.    Mr. Robert has under his management authority vans of a modified
version like Brink's or Dunbar Armored's commonly seen in the United
States.

41.   Plaintiff knows of three clandestine security organizations that operate under the auspices of the state's secret security operations for the protection Ghana's gold industry, similarly to undercover agents that protect London's diamond district.

42.   Ghana's leading export is gold and many buyers from around the world come to make purchases in addition to diamonds and gems.

43.   July of 2002, Plaintiff met with Mr. Robert at his office for a scheduled one-on-one meeting, not knowing before hand that an executive from Ghana Commercial Bank would be there.

44.   Plaintiff in a pre-written statement asked Mr. Robert to sign it to clarify what legal issues if any that had to be resolved before the release of the funds.

45.   Dr. Williams a highly placed manager at Ghana Commercial Bank picked-up the written statement from the desk and read it. But no action was taken.

## Bankruptcy

46.   Plaintiff was forced to file for bankruptcy in November of 2002 in the Federal District Court of Minnesota.

47.   In 2003, an Adversarial Proceeding took placed resulting in the court's approved Settlement Agreement between Plaintiff and creditors.

48.   The Agreement allowed Plaintiff to make good on his commitment and character with specific instructions to follow for recovering and satisfying financial obligations.

49.   Next, the Settlement Agreement was registered at the High Court of Ghana in a courtroom proceeding in the fall of 2004.

## Fraud in the banking industry

50.   On 11 July 2003, Plaintiff received communication from Royal Crown Securities and Deposits, an account facility for holding funds, along with a bank deposit receipt.

51.   The bank deposit receipt of Fifty-Four Million dollars included Plaintiff's Eighteen Million was given to Plaintiff as proof that the money has been registered with the bank.

52.   Plaintiff anonymously on three separate occasions verify Royal Crown Security and Deposits' account number and found it to be accurate.

53.   After each of the two bank visitation from 20 July 2003 to 17 March 2004-nine months, Plaintiff was immediately informed by an officer of Ghana Commercial Bank that someone had contacted the bank inquiring about the account and that action needed to be taken.

54.   3 June 2004, Plaintiff personally visited the Circle Branch of Ghana Commercial Bank and sat directly in front of the computer and showed the bank administrator the deposit receipt with the account number.

55.   Again, as in the two previous inquiries, it was confirmed that the account number matched the name. And again, as with the previous two visits over nine-months with predictable timing, Plaintiff was immediately contacted by a bank official.

56.   Mr. K Agyeman Badu, a lawyer and Registrar for the Ghana Commercial Bank Limited published  Vol. 1 Nos. 2 & 3 of February-June, 1999  edition of  Banking & Financial Law Journal of Ghana states

"Management Fraud is generally difficult to uncover " and can bring about the financial collapse of the banking institution ( Pertaining to 18 U.S.C. 1344, 1963, and 1343) .

57.    In the same edition, Mr. K. Agyeman Badu identifies employee fraud accounting for "65% of all banking fraud" either working alone or in a conspiracy with others both in and outside the bank. ( Pertaining to 18 U.S.C. 1344, 1963, and 1343) .

58.    Mr. J.C. Danso, Senior Branch Manager of Ghana Commercial Bank, Ltd. and highly regarded throughout the banking industry, published an article under the title Preventing Bank Frauds   Vol. 1 Nos. 2 & 3 of February-June, 1999 edition of Banking & Financial Law Journal of Ghana calling on all banks in Ghana to establish " more effective internal control systems and antifraud programmes" with very harsh sentences for the perpetrators ( Pertains to 18 U.S.C.1343, 3293, 1963, and 1344) .

59.    Ms. Akanbangbiem Agamu Asokea, General Manager of the Legal Services Division of Ghana Commercial Bank Limited in her Declaration dated 18 June 2009 to the U.S. District Court of Minnesota confirms, Mr. Badu and Mr. Danso's authoritative expose of the pattern of unchecked fraud in Three proclamations:

60.    One, confirmed the existence of the bank account number 214443 with a small amount of money on record. (Pertains to 18 U.S.C. 1343 and 1344).

61.    Two, acknowledged the practice of conspiracy fraud by confirming account Number 214443 but disputed the name of the account as different from Royal Crown Securities and Deposits. (Pertains to 18 U.S.C. 1343 and 1344).

62.     Three, explained how the security procedures at GCB's vault
facility would prevent unauthorized entry but didn't explained the possibility
of the money being delivered. (Pertains to 18 U.S.C. 1343 and 1344).

63.     In the discovery process, the Federal Reserve Bank of New York
confirms Mr. J.C. Danso's authoritative expose that no bank in Ghana is
exempt from practices under 18 U.S.C. 1343 and 1344.

## A banking relationship with direct connections to Defendants

64.     In 2001, Plaintiff bank wired over twenty thousand dollars to an
account at Ghana Commercial Bank. Citibank of New York (CITIUS33),
NY, NY USA Beneficiary Name: Ghana Commercial Bank GHCBGHAC,
Circle Branch. Bennett Acct: 36062908; Info for Beneficiary: Goldwin
Kwami Ahiakpopt Account # 213785.

65.     Mr. Goldwin Kwami Ahiakpopt has enjoyed a long relationship with
Defendants and is considered to be a prime customer at Ghana Commercial
Bank.

66.     Defendants have avoided obtaining an affidavit from Mr. Ahiakpopt
of the identities of those in his banking network and his associates in
government and at Ghana Commercial Bank.

## Contact with all levels of law enforcement agencies

67.     Being totally shocked in the consciousness of the Western world of
the actual rawness of criminality, Plaintiff was driven to appeal to the
highest political power and subsequently all law enforcement agencies.
Chronicle:

68.    *    14 July 2003, Plaintiff's letter to President John Kufuor apprising him of the currency assets and legal papers of ownership taken under arm of might and to use his office to affect an investigation, arrest, and prosecution of those who have executed extortion and fraud. And to return the currency assets.  cc: President George Bush Certified Mail # 7099 3220 0003 9709 4541.

69.    Under the Constitution of the Republic of Ghana 1992 Article Chapter 8 Article 88 (2), President Kufuor brought the matter to the attention of Attorney General of Ghana, yet retaining personal responsibility under the Serious Fraud Office for a complete investigation.

70.    In the same letter, Plaintiff pointed out the ongoing problem of police and those in position of information tipping off the targets for arrest and prosecution.

71.    Tipping off targets of investigation and arrest is a long standing entrenched pattern of exchanged of information for assets including money and personal property.

72.    *    7 July 2004 Plaintiff spent nine weeks at the Police Headquarters on a daily basis interacting with officers pushing them to be pro-active and aggressive as part of Ghana Anti-Corruption Coalition organization.

73.    *    8 July 2004, Plaintiff's Registered Letter No. 00039 to Mr. David Asante-Apeatu, Chief Director of the Police, urging a multi level operation in the arrest of named perpetrators of an enlarged circle of conspirators related to Plaintiff's currency consignments pursuant to Section 147 of Ghana's Criminal Code, 1960 (Act 29).

74.     In the same letter, Plaintiff once again pointed out the standing problem of the police and others in special positions of information tipping off the targets for arrest and prosecution.

75.     *  3 August 2004, Plaintiff had a face to face meeting at the Ministry of Justice/Office of the Attorney General requesting immediate action for recovery the funds from Ghana Commercial Bank.

76      The main excuse given was that case is not winnable in Ghana's court therefore "no need to take action".

77.     *  16 August 2004, Plaintiff's letter to Mr. Osafo Sampong Ministry of Justice/Attorney-General Office of Ghana seeking the arrest and prosecution of named individuals with attention to the problem of ongoing flow of information to conspirators that frustrates efforts for arrest, prosecution, and recovery.

78.     In the same letter 16 August 2004 letter to Mr. Osafo Sampong Ministry of Justice/Attorney-General Office of Ghana , a list was given of the resources and assistance needed to perform his duty from the United States Bilateral Programs for African states on training and technical assistance namely  Anti-Crime Training and Technical Assistance Program (ACTTA), International Criminal Investigative Training Assistance program (DOJ/ICITAP),  Overseas Prosecutorial Development, Assistance and Training (DOJ/OPDAT), and the Financial Crime Enforcement Network (FinCEN)

79.     *  27 October  2004 Plaintiff's  Registered Letter No. 00007 to Mr. Osafo Sampong Ministry of Justice/Attorney-General Office of Ghana appealing for urgent action driven by Plaintiff's ongoing investigation of

intra-governmental conspiracy, leading to a defined social class that stands above national and international laws.

80.   *   18 October 2004, Plaintiff made one of two visitation to the Bureau of National Investigation (equivalent to the Federal Bureau of Investigation-FBI) Plaintiff gave a report on offences including but not limited to:

81.   Section 1028 (relating to fraud and related activity in connection with identification documents;  section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),  section 1503 (relating to obstruction of justice), section 1510 (relating  to obstruction of criminal investigations),section 1951 (relating to interference  with commerce, robbery, or extortion), section 1952 (relating to racketeering).

## The  Solicitor General's narrow view

82.   Amma A. Gaisie's , the Solicitor General,  Declaration18 June 2009  to the U.S. District Court of Minnesota  disavowed  expropriating Plaintiff's assets.

83.   Starting with a single act of extortion grew to encompassed forms of criminal acts in different phases at different times with different people all apart of the political model of sharing the gain in the communion of fellowship.

84.   Finally, the government's involvement is automatic be it in the phases of extortion, fraud, or the conspiracy to obstruct justice, for conspiracy fraud and corruption have caused all major state-owed enterprises, no exception,

to either collapse or be sold to private parties. Or, in the case of Ghana
Commercial Bank, Ltd. seeking investors as minority share holders.

## Judicious proceedings

85.   *   24 September 2004, Plaintiff in the suit against an organizational
unit of shipping and transporting obtained a judgment based on fraud from
the District Court of Ghana.

86.   *   In the fall of 2004, Plaintiff registered with the High Court of Ghana
Adversarial Settlement Agreement giving standing for acts of assets
recovery.

87.   *   15 December 2005 the Bankruptcy Court of the District of
Minnesota issued an Order Directing the Turnover of Property.

88.   *   Defendants have had ample time to comply with the Order.

89.   *   Defendants didn't challenge the Order.

90.   *   7 March 2007, the first lawsuit was filed against Defendants for
assets recovery. The lawsuit was dismissed for improper service of process
in spite of the fact that Defendants didn't make an appearance.

91.   *   01 October 2008, the second lawsuit was filed against Defendants
for assets recovery. Defendants challenged. The lawsuit was dismissed with
prejudice for improper service of process and on appeal reversed and
remand.

92.    All procedures under the laws of Ghana for reporting and

investigating financial crimes have been exhausted, yet there remains a chain

of evidence for prosecution and for recovery.


### Count One

Treaty violation
Deprivation of rights to Personal Property
42 U.S.C. 1983


Paragraphs 1 through 92 are hereby incorporated by reference as fully set
forth herein


93.    Mr. John Atta Mills in his capacity as the Chief Executive Officer of

the government of Ghana deprived Plaintiff of his rights of property under

the Treaty of Disposition of Real and Personal Property, the multi-lateral

treaty among the United Kingdom, United States of America, and Ghana.

Article II of the treaty reads:

"The subjects or citizens of each of the Contracting Parties shall have full power to
dispose of their personal property within the territories of the other by testament,
donation, or otherwise; and their heirs, legatees, and donees, being subjects or citizens of
the other Contracting Party, whether resident or nonresident, shall succeed to their said
personal property, and may take possession thereof either by themselves, or by others
acting for them, and dispose of the same at their pleasure, paying such duties only as the
citizens or subjects of the country where the property lies shall be liable to pay in like
cases."

And Article V
"In all that concerns the right of disposing of every kind of property, real or personal,
subjects or citizens of each of the High Contracting Parties shall, in the dominions of the
other, enjoy the rights which are or may be accorded to the subjects or citizens of the
most favored nation."

94.    Plaintiff was deprived Due Process Clause under the Fourteen

Amendment of the U.S. Constitution and under the Constitution of Ghana

Chapter Six (7) "The State shall guarantee the ownership of property and the right of inheritance."

95.    Mr. John Atta Mills has willfully upheld the long standing ideological practice of malicious violations of foreigners' property rights for the purpose of benefiting and nurturing cronyism.

96.   Mr. John Atta Mills has neither a training policy nor mandatory programs to educate all government employees, agents, departments, instrumentality of the state, and subdivisions on the constitutional differences between right verses wrong, good verses evil,  theory of law verses actual fraudulent practices, and indifference verses legal obligation to uphold individual's property rights.

**Relief sought**

18,000,000 dollars plus interest @ 3 % annually.


## Count 2


Misapplication by bank officer or employee
18 U.S.C. 656.


Paragraphs 1 through 92 are hereby incorporated by reference as fully set forth herein


97.      Royal Crown Security was used as a holding account in which to make book/ledger entry without using Plaintiff's name for the purpose of misapplication of funds.

**Relief sought**

Statutory allotment of remedies is three times the amount taken (18,000,000 times 3) $54,000,000 dollars Under 18 U.S.C. Sec. 1964 (c).

## COUNT 3

### Wire Fraud/ 18 U.S.C 1343

Paragraphs 1 through 92 are hereby incorporated by reference as fully set forth herein

98.   The bank deposit receipt is an artifice to obtain money by wire.

**Relief sought**

Statutory allotment of remedies is three times the amount taken (18,000,000 times 3) $54,000,000 dollars Under 18 U.S.C. Sec. 1964  (c).

## Count 4

### Obstruction of Justice/ Malfeasance
### Criminal investigation 18 U.S.C. 1510

Paragraphs 1 through 92 are hereby incorporated by reference as fully set forth herein.

99.    For over five years, the law enforcement agencies and others in
positions of privileged information tipped off targets of investigation and
willfully omitted the investigation of Mr. Goldwin Kwami Ahiakpopt
Account # 213785.

**Relief sought**

Statutory allotment of remedies is three times the amount taken (18,000,000
times 3) $54,000,000 dollars Under 18 U.S.C. Sec. 1964  (c).

## **Count 5**

Obstruction of Justice/ Nonfeasance
Obstruction of court orders
18 U.S.C. 1509

Paragraphs 1 through 92 are hereby incorporated by reference as fully set
forth herein

100.    Over five years, Defendants in the performance of their duties
intentionally avoided available tools offered under the U.S. Bilateral
Programs and treaty to assist in the recovery of Plaintiff's currency assets.

**Relief sought**

The statutory allotment of remedies is three times the amount taken
(18,000,000 times 3) $54,000,000 dollars Under 18 U.S.C. Sec. 1964 (c).

CASE 0:10-cv-04655-DWF-JJK   Document 1   Filed 11/18/10   Page 20 of 21

## COUNT 6

Article 28 of the Treaty Against Corruption- preventing foreign commerce

Related to statutes

28 USC 1605 (a) (3)
And
Ghana's Act 555-State Proceedings Act, 1998 3. ( 3)

Paragraphs 1 through 92 are hereby incorporated by reference as fully set forth herein

Ghana's Act 555-State Proceedings Act, 1998 3. ( c)
"a breach of the  duty at common law or under any other law attached to the ownership, occupation, possession or control of property."

And

1605 (a) (3)

"in which rights in property taken in violation of international law are in issue'

101.    Defendants have acknowledged and adopted the attributes of corruption and fraud.

102.    Plaintiff's currency assets are an aggregate of 184 billion dollars taken annually from Africa's economic development through corruption and fraud.

**Relief sought**

The statutory allotment of remedies is three times the amount taken (18,000,000 times 3) $54,000,000 dollars Under 18 U.S.C. Sec. 1964  (c).

# COUNT 7

Article 35 of the Treaty Against Corruption- Forfeiture of Non-Conviction Based (NCB) Assets- A private right of action

Related to statutes

18 U.S.C. 984
And
Ghana's Act 555-State Proceedings Act, 1998  3. ( 3)

> "Where the Republic is bound by a statutory duty which is binding also on persons other than the Republic and its officers, the Republic,  in respect of a failure to comply with that duty, be subject to the liabilities in tort to which it would be so subject if the Republic were a private person of full age and capacity."

Paragraphs 1 through 92 are hereby incorporated by reference as fully set forth herein.

103.    Defendants did prevent trade, investment, and economic activities by denying Plaintiff access to his assets which in part was earmarked for the salt and fish industries of Ghana as priorities under the African Growth and Opportunity Act to enrich themselves and others.

**Relief sought**

A Judgment order for in rem forfeiture of 18, 000,000 dollars.